IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MATTHEW ERIC FENN,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 6:16-cv-01004-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Matthew Eric Fenn brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

In August 2011, plaintiff applied for DIB and SSI. He alleged disability beginning March 1, 2010,[1] due to degenerative disc disease, cognitive deficits stemming from head trauma, bipolar disorder, and PTSD. Plaintiff later amended his alleged onset date to July 18, 2011, the point at which he stopped working.

Plaintiff's applications were denied initially and upon reconsideration. On October 10, 2013, plaintiff appeared at a hearing before an ALJ. At plaintiff's counsel's request, the ALJ held the record open and ordered a consultative psychological evaluation to assess plaintiff's cognitive limitations and traumatic brain injury. On June 17, 2014, the ALJ convened a second hearing. That hearing addressed the evaluation of the consultative examiner as well as a second psychological evaluation, also conducted after the first hearing.

The ALJ found plaintiff not disabled in a written decision issued July 18, 2014. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v.*

---

[1] Plaintiff's DIB application lists an alleged onset date of January 1, 1997. This appears to be an error; that date is not referenced anywhere else in the record and plaintiff continued to work at the substantial gainful activity level for more than ten years after 1997.

*Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine status post-laminectomy, mild degenerative disc disease of the cervical spine, asthma, bipolar disorder, depression, anxiety, alcohol abuse, and marijuana dependence/abuse." Tr. 23; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). In addition to other limitations not relevant to this appeal, the ALJ found plaintiff was

> able to understand, remember, and carry out only simple instructions that can be learned in 30 days or less. The claimant cannot have direct public contact. He is able to perform in a low-stress job, which is defined as work that involves minimal changes in the work setting and work duties.

Tr. 25. At step four, the ALJ concluded plaintiff could not perform any of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a small products assembler, an electronics assembler, or an office helper. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits.

## DISCUSSION

Plaintiff contends the ALJ committed three harmful errors with respect to the extent of his cognitive limitations.[2] First, plaintiff argues the ALJ gave little weight to his testimony about the extent of his mental limitations without providing legally sufficient justification. Second, plaintiff asserts the ALJ erred by giving little weight to the opinion of examining psychologist Dr. Taubenfield. Finally, plaintiff avers the ALJ improperly rejected the statements of plaintiff's wife, father, stepmother, and brother about the severity of his mental health symptoms.

I. *Plaintiff's Subjective Symptom Statements*

I begin with plaintiff's argument that the ALJ failed to provide legally sufficient reasons to reject his testimony about the extent of his cognitive limitations. When a claimant's medically

---

[2] Plaintiff does not argue that the ALJ should have assessed different or more restrictive limitations due to his back pain or asthma. Accordingly, this opinion focuses solely on the ALJ's evaluation of plaintiff's cognitive limitations.

Page 4 – OPINION AND ORDER

documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

At the first hearing, the ALJ asked plaintiff why he was unable to return to some type of "very easy" work. Tr. 58. Plaintiff responded "[b]ecause of my chronic back and my bipolar, I have an extreme anxiety, and depression, and I [am] really forgetful. And I have a hard time staying on task." *Id.* When pressed to provide specific examples of difficulty staying on task, plaintiff stated that he has left the stove burner on a few times and that he was unable to work for his brother in part because he couldn't focus.

Plaintiff lives with his grandfather and they "help each other," but the grandfather "helps me more than I help him." Tr. 52–53. Plaintiff testified that he is not staying with his grandfather as his caregiver but because he needed a place to live. He helps his grandfather by doing laundry and preparing simple meals. He reads the paper but immediately forgets what he read. However, he does not need to be reminded to take medications and uses no special system to help himself remember. He is able to drive by himself and he never gets lost. He goes to the

store by himself, though he uses a list to help remember what he needs to purchase. At the second hearing, plaintiff reported that his then-nine-year-old daughter had begun living with him full-time and that he was responsible for getting her to school and preparing meals for her.

The ALJ found that plaintiff's symptoms were "not supported to the extent reported" based on "the findings on examination and imaging, the level of treatment prescribed, observations made by treating and examining sources, and the claimant's activities." Tr. 26. The ALJ also asserted there were several inconsistencies between plaintiff's statements in the record that "significantly affect his credibility."[3] Id. However, the ALJ credited plaintiff's statements about his symptoms "to the extent they were consistent with the overall record and supported by objective evidence." Id.

The ALJ cited several specific examples of inconsistent statements. First, the ALJ noted that in a previous disability application, plaintiff had asserted he needed his wife's help for most activities of daily living. But by the time of the hearing, plaintiff and his wife had separated and plaintiff was living with his grandfather. The ALJ acknowledged plaintiff's statements that his grandfather was taking care of him rather than the other way around, but found those statements inconsistent with plaintiff's repeated assertions to treating mental health counselors that he was acting as his grandfather's caregiver. The ALJ found the inconsistency particularly clear in view

---

[3] Pursuant to SSR 16-3p, the term "credibility" has been eliminated from Social Security sub-regulatory policy. *See Trevizo v. Berryhill*, 862 F.3d 987, 1000 n.5 (9th Cir. 2017). The term was removed to clarify that "assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms . . . and not to delve into wide-ranging scrutiny of the claimant's character for truthfulness." *Id.* (citations and quotation marks omitted). Although the decision currently under review uses this now-disfavored term, the ALJ made clear she understood the purpose of evaluating a claimant's subjective symptom statements. She expressly noted that, in a Social Security disability decision, "assessment of credibility is not a determination of truthfulness, motive, intention, or sincerity." Tr. 26. Instead, "[c]redibility refers to whether the information is accurate, consistent, supported by objective medical findings, and consistent with actual activities." *Id.*

Page 6 – OPINION AND ORDER

of plaintiff's testimony at the hearing that he was truthful to those counselors. Plaintiff argues that these inconsistencies are actually evidence of his cognitive impairment, particularly his problems with memory and limited insight. Although that is one plausible way to interpret the evidence, the record does not compel that conclusion. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (requiring courts to uphold the Commissioner even where evidence exists to support more than one rational interpretation).

The ALJ did identify one inconsistency that is not a convincing reason to discredit plaintiff's testimony: she discussed conflicting statements regarding whether and how frequently plaintiff uses marijuana. Evidence of dishonesty regarding drug use can be relevant when it supports the inference that the plaintiff may have exaggerated symptoms to obtain medication. *Edlund*, 253 F.3d at 1157. Here, although there is evidence plaintiff lied about his drug use, it is unclear how such inconsistencies bear on the reliability of plaintiff's statements about his symptoms because there is no indication he exaggerated his condition in order to obtain marijuana. With that exception, however, the inconsistencies the ALJ identified are clear, convincing reasons to give less weight to plaintiff's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (holding that an ALJ may consider prior inconsistent statements concerning symptoms in weighing subjective symptom testimony).

The ALJ also found plaintiff's testimony about the extent of his cognitive problems inconsistent with his activities of daily living. Specifically, the ALJ concluded that a person suffering symptoms as severe as those alleged by plaintiff would be unable to drive without problems, prepare meals, do household chores, help care for an elderly relative, and have full-time custody of a child in elementary school. This, too, is a clear, convincing reason to doubt plaintiff's symptom allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating

that "daily activities may be grounds" to question a plaintiff's testimony about symptom severity when those activities "contradict [the plaintiff's] other testimony").

The ALJ also found plaintiff's report of cognitive limitations brought on by an assault and acute head trauma in July 2011 unsupported by the record. Medical records following that incident document severely broken facial bones but no brain abnormality. Plaintiff did not have surgery after the incident. Standing alone, this absence of objective support for alleged symptom severity would be an insufficient reason to reject plaintiff's symptom testimony. *See Smolen*, 80 F.3d at 1282. But because the ALJ provided several other reasons to doubt the validity of that testimony, the ALJ permissibly considered the absence of objective evidence connecting the July 2011 incident to plaintiff's cognitive limitations evaluating his symptoms. *See Batson*, 359 F.3d at 1196.

Next, the ALJ observed that, "[i]n contrast to claimant's adamant assertions that he has difficulty remembering and concentrating due to a severe head injury, at the June 2014 hearing, he had absolutely no problem remembering the details and distinctions of two separate neuropsychological evaluations he attended months earlier. He also recited the details of his past work without trouble." Tr. 28. Unlike the failure to demonstrate pain or fatigue at a hearing, this sort of concrete "conflict between alleged symptoms and abilities demonstrated at the hearing . . . may be considered in evaluating symptom testimony." *See Moore v. Berryhill*, 2017 WL 3642102, *5 (D. Or. Aug. 24, 2017) (summarizing Ninth Circuit law on "sit and squirm" jurisprudence to determine when an ALJ may properly take into account her firsthand observations of a claimant's behavior).

Finally, the ALJ referred to evidence that plaintiff's bipolar disorder has responded well to medication and that he has obtained essentially routine treatment with medication and

counseling since an acute manic episode in 2011. The ALJ acknowledged the severity of that episode, during which plaintiff ran through four lanes of traffic naked and threatened to kill himself and others with a sword. But the ALJ found the seriousness of the episode mitigated by plaintiff's discharge from the hospital after just a short stay, due to medication which brought his Global Assessment Functioning ("GAF") score from 30 (indicating "inability to function in almost all areas" or behavior "considerably influence by delusions or hallucinations") upon admission to 70 (indicating mild symptoms) upon discharge. American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision ("DSM-IV") 34 (2000). This description of the record contains errors; most notably, plaintiff's GAF score was actually *40*, not 70, when he was discharged from the hospital. Tr. 734. A GAF score of 40 indicates "some impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34. Thus, upon discharge, plaintiff was still experiencing substantial difficulty functioning. However, the record shows that plaintiff promptly established care at Douglas County Mental Health. About a month after the manic episode, his counselor there assessed a GAF score of 70. Tr. 825.

Treatment documents since the manic episode show two years of relatively consistent individual counseling and group therapy in which treating providers assessed GAF scores of 60, indicating "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." DSM-IV at 34. There is no evidence plaintiff has had an episode of decompensation since 2011.

Viewing the evidence as a whole, even taking into account the error regarding GAF on discharge, the ALJ reasonably characterized plaintiff's mental health treatment as routine and

Page 9 – OPINION AND ORDER

conservative. That is a clear, convincing reason to doubt subjective symptom testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that an ALJ permissibly may infer from conservative treatment that an impairment is not as disabling as alleged). The ALJ strayed into shaky territory when she noted plaintiff's spotty compliance with medication regimens and uneven counseling attendance. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (disapproving use of a plaintiff's "occasional decisions" to go "off her meds" when those decisions "were at least in part a result of her underlying bipolar disorder and her other psychiatric issues"). But in view of the rest of the ALJ's reasoning, any error was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

In sum, the ALJ supported her decision to give limited weight to plaintiff's symptom testimony with clear, convincing reasons supported by substantial evidence. Moreover, to the extent plaintiff's testimony was consistent with the record as a whole and with objective medical evidence, the ALJ adequately accounted for that testimony by including limitations in the RFC requiring easy-to-understand and -remember instructions in the workplace, no public contact, and a low-stress job with minimal changes in setting and duties.

II. *Treatment of Medical Opinions*

Plaintiff challenges the ALJ's treatment of two medical opinions: the opinion of examining psychologist Dr. Taubenfield and the opinion of examining psychologist Dr. Villanueva. Specifically, plaintiff contends the ALJ erred by crediting Dr. Villanueva's opinion regarding his mental limitations and rejecting Dr. Taubenfield's evaluation of those same limitations.

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02

(9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). Accordingly, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contracted by another doctor, can only be rejected for specific and legitimate reasons." *Id.* at 830–831.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

After the first hearing, the ALJ referred plaintiff to Dr. Villanueva for a psychological evaluation. Dr. Villanueva conducted a clinical interview and evaluated the results of standardized tests performed by a technician. Those test results indicated borderline intellectual functioning. In his report, Dr. Villanueva found the test results unreliable for several reasons. First, he found borderline intellectual functioning inconsistent with plaintiff's demonstrated capacities during the evaluation, including his ability to provide a coherent, sequential, detailed history and his attention to task and directions. Second, he found the test results difficult to square with plaintiff's educational and work history, particularly the fact that he did not require special education services and was able to work full-time in competitive jobs for thirteen years. Third, Dr. Villanueva did not believe a person with such borderline intellectual ability would be

able to drive without problems. Finally, Dr. Villanueva stated that the July 2011 incident could not explain sudden onset of such severe cognitive symptoms:

> Borderline intellectual functioning, with memory scores falling two and half standard deviations below the mean, would not be explained by mild head injury. There are no indications from the claimant's history of a greater than a mild head injury. The head injury would need to be extremely severe to create these types of results.

Tr. 974. Dr. Villanueva opined that plaintiff's cognitive limitations would produce no relevant workplace limitations.

Plaintiff also was evaluated by Dr. Taubenfield. Dr. Taubenfield conducted a clinical interview and he administered more extensive objective testing than Dr. Villanueva. The test results obtained by the two doctors were remarkably consistent. However, Dr. Taubenfield reached dramatically different conclusions from those results. He drew a connection between previous assaults documented in plaintiff's medical history and the July 2011 assault, and concluded the manic episode was a result of PTSD triggered by that assault. Dr. Taubenfield also noted that plaintiff's memory test results are "significantly weaker than general intelligence scores," a result he considered strongly suggestive of dementia. Tr. 990. He found significant deficits in executive functioning. Dr. Taubenfield confirmed plaintiff's diagnoses of bipolar disorder and alcohol/cannabis abuse in remission, and also diagnosed panic disorder, social phobia, PTSD, dysthymia, ADHD, dementia, borderline intellectual functioning, and dependent personality disorder with avoided, antisocial, borderline, and negativistic traits. He assessed a GAF of 45. Dr. Taubenfield reviewed statements by plaintiff's brother and stepmother and found them consistent with his assessment. He predicted that twelve percent of the time, plaintiff would be unable to perform adequately in a full-time work setting.

Faced with these two irreconcilable opinions, the ALJ gave significant weight to Dr. Villanueva's report. She found that report "consistent with the overall record, which documents" improvement and stabilization following the July 2011 manic episode. Tr. 29. By contrast, she gave little weight to Dr. Taubenfield's opinion. The ALJ noted that the limitations in Dr. Taubenfield's opinion went substantially further than limitations expressed by any treating mental health provider, rendering them inconsistent with the treatment record overall. She noted that apart from Dr. Taubenfield's opinion, the medical record is devoid of "observations, findings, or referrals indicating the level of cognitive impairment alleged by the claimant and reiterated by Dr. Taubenfield." *Id.* In particular, the ALJ found Dr. Taubenfield's assessment of a GAF of 45 inconsistent with treatment records consistently assessing a GAF of 60. The ALJ cited Dr. Taubenfield's reliance on "subjective reports and efforts on testing" as a reason to doubt the opinion's reliability. *Id.* She noted that plaintiff's treating mental health counselors never adopted Dr. Taubenfield's diagnosis of PTSD. Finally, the ALJ stated that plaintiff was not honest with Dr. Taubenfield about his marijuana use.

The ALJ's reasoning contains one error: although, as indicated above, the record contains inconsistent statements about marijuana use, it is not clear that plaintiff was dishonest with *Dr. Taubenfield* about marijuana use. The purported inconsistency is between plaintiff's December 2013 statement to Dr. Villanueva that he had smoked marijuana three times in the past three months and plaintiff's January 2014 statement to Dr. Taubenfield that he had not smoked any marijuana since November 2013. But those statements are not clearly inconsistent with one another; plaintiff could have smoked marijuana three times in the three months leading up to his December 2013 evaluation yet still stopped smoking sometime in November 2013. Accordingly, this alleged inconsistency is not a legitimate reason to discredit Dr. Taubenfield's opinion.

Page 13 – OPINION AND ORDER

But the ALJ provided several specific, legitimate reasons to give little weight to Dr. Taubenfield's opinion. Dr. Taubenfield's opinion is not only inconsistent with Dr. Villanueva's opinion, it is inconsistent with the observations and GAF scores consistently documented over two years of treatment with Douglas County Mental Health. Not only did the Douglas County counselors consistently assess a GAF of 60, they never suggested that plaintiff's treatment should be escalated due to symptom severity. *See Orn*, 495 F.3d at 631 (approving consistency with the medical record as a valid factor in evaluating medical opinions). Moreover, Dr. Taubenfield's report relied in large part on plaintiff's subjective reports of his own symptoms, which the ALJ permissibly discredited. *See Batson*, 349 F.3d at 1195 (endorsing giving less weight to a medical opinion when it is based in large part on properly-discredited subjective symptom statements). Finally, the ALJ correctly noted that although plaintiff's treating counselors were aware of the PTSD diagnosis, they did not adopt it. The evidentiary value of that fact is limited; as plaintiff notes, there is no evidence the Douglas County staff had access to Dr. Taubenfield's full report. Nonetheless, because the record shows the counselors were aware of the diagnosis, the ALJ permissibly considered the treating providers' failure to reevaluate plaintiff for PTSD in weighing Dr. Taubenfield's opinion.

Plaintiff points out that objective test results support Dr. Taubenfield's diagnosis of borderline intellectual functioning, which in turn supports Dr. Taubenfield's prediction plaintiff would be off task at work twelve percent of the time. Ordinarily, such test results would be powerful evidence to support Dr. Taubenfield's conclusions. But here, the ALJ was faced with two examining medical professionals who reached wildly divergent conclusions based on largely the same evidence. Dr. Taubenfield's opinion is more consistent with plaintiff's test scores and provides an explanation for plaintiff's manic episode, but Dr. Villanueva's opinion is more

Page 14 – OPINION AND ORDER

consistent with plaintiff's work history, educational history, and activities of daily living. The ALJ had the duty to resolve that conflict, and doing so necessarily required discrediting at least one of the opinions.

Plaintiff argues that the ALJ was required to accept Dr. Taubenfield's opinion because it was based on a more complete set of evidence, including Dr. Villanueva's evaluation and statements from plaintiff's stepmother and brother. Once again, plaintiff advances a plausible *alternative interpretation* of the evidence. But that is insufficient to justify overturning the ALJ's decision because the ALJ's interpretation is *also* supported by substantial evidence. *Batson*, 359 F.3d at 1196.

The ALJ provided specific, legitimate reasons to support her decision to give less weight to the opinion of Dr. Taubenfield.

III.  *Lay Witness Statements*

Finally, plaintiff argues the ALJ erred in rejecting the statements of plaintiff's wife, father, stepmother, and brother. In general, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Cater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis omitted). This is because "[a]n eyewitness can often tell whether someone is suffering or merely malingering," particularly if the witness "view[s] the claimant on a daily basis[.]" *Dodrill*, 12 F.3d at 919. An ALJ may discount lay witness testimony only by providing reasons that are "germane" to each witness. *Id.* However, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted).

Plaintiff's wife, Laurie Fenn, provided two written statements. In the first statement, dated May 2010, Ms. Fenn stated plaintiff "has a very hard time concentrating and gets very frustrated that he is unable to do what he was able to do before injury." Tr. 368. In the second statement, dated September 2011, Ms. Fenn reported that it "seems hard for [plaintiff] to concentrate on anything for any length of time" and that plaintiff "has a very hard time completing tasks on his own." Tr. 417, 420. Plaintiff's father, Leo Fenn, testified at the October 2013 hearing. He stated that plaintiff is "childlike," lacks the ability to "manage his life," and is "forgetful." Tr. 91, 93. He stated that plaintiff could not live independently and that plaintiff's grandfather cares for plaintiff, not the other way around. Plaintiff's stepmother, Bernis Wagner, submitted a letter. Ms. Wagner owns a real estate business. She hired plaintiff do handyman work such as cleaning up yards, removing debris, sweeping, and cleaning gutters. She reported it was "impossible" for him to do the work because "[h]e is always in a daze, he shuffles his feet as he walks and cannot stay on task. He has to be under constant supervision. If you leave him for even a few minutes, he stops working and forgets what he was to do." Tr. 456. Plaintiff's brother, Scott Fenn, submitted a similar letter. Mr. Fenn owns a yardwork business and stated that after giving plaintiff a chance, he concluded plaintiff lacks the "attention to detail, self-motivation, the ability to follow directions, mow straight lines, remember certain things for different properties, . . . and communicate with the customer and fellow workers" necessary to successfully work for the company. Tr. 458.

Regarding Ms. Fenn's first statement, the ALJ "generally credit[ed] the information that is consistent throughout the reports regarding the claimant's daily activities and the effect of pain

on his functioning to the extent those are consistent with the overall record and supported by objective evidence." Tr. 26. The ALJ did not discuss Ms. Fenn's second statement. As for plaintiff's father's testimony, the ALJ found it inconsistent with the observations of plaintiff's treating sources and with plaintiff's reports regarding his own activities. Turning to the letters submitted by Ms. Wagner and plaintiff's brother, the ALJ gave them little weight because they were not consistent with the record as a whole or with claimant's activities, in particular his ability to care for his grandfather, live independently from his wife, and care for his daughter.

The ALJ provided germane reasons to reject Ms. Fenn's first statement and the other lay witness statements. The ALJ permissibly found the lay witnesses' statements about plaintiff's inability to stay on task are inconsistent with plaintiff's daily activities. It is reasonable to conclude that a person who cannot remember what he is doing if left unattended for even a few minutes could not care for a ten-year-old child or prepare meals and otherwise assist in the care of an elderly relative. The ALJ was not required to accept plaintiff's father's testimony that plaintiff's grandfather actually cares for plaintiff because that testimony was inconsistent with plaintiff's repeated, contrary statements to treating mental health providers. To the extent the lay witnesses' statements support less restrictive cognitive limitations, those limitations are adequately accounted for by the mental restrictions in the RFC.

The ALJ erred by failing to address Ms. Fenn's second statement. However, that error was harmless because the reasons the ALJ relied upon to discredit the other lay witness statements are equally applicable to Ms. Fenn's second statement.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 21st day of September 2017.

_____
Ann Aiken
United States District Judge